## Gordon, Secretary of Banking, v. Dodge

*William A. Schnader*, Attorney General, with him *Richard H. Klein*, for plaintiff.

*F. B. Moser* and *Samuel Gubin*, for defendant.

LARK, J., December 6, 1933.—The plaintiff is the Secretary of Banking of Pennsylvania and as such is the receiver of Farmers & Mechanics Bank. The defendant is a stockholder in the bank, which was incorporated on May 17, 1915, under the provisions of the Act of May 13, 1876, P. L. 161. The bank has failed, and the plaintiff is here seeking to enforce the defendant's alleged individual liability as a stockholder to an amount equal to the par value of the stock held by him.

The defendant has filed an affidavit of defense challenging the constitutionality of the Act of 1876 upon the ground that a portion of section 5 thereof is

violative of article III, section 3, of the Constitution, which provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." The title of the Act of 1876 is as follows: "An act for the incorporation and regulation of banks of discount and deposit."

Section 5 of the act, as amended by the Act of May 3, 1909, P. L. 412, reads as follows: "No corporation shall be organized under this act with a capital stock of less than fifty thousand dollars, . . .; which capital stock shall be divided into shares of not less than fifty dollars each, which shall be deemed personal property and transferable on the books of the corporation in such manner as may be prescribed by the by-laws and articles of association thereof; and every person to whom stock shall be transferred as aforesaid, shall, in proportion to the shares received, succeed to all the rights and liabilities of the prior holders thereof, and no change shall be made in the articles of association by which the rights, remedies, or securities of the existing creditors of the corporation shall be impaired. The shareholders of any corporation formed under this act shall be individually responsible, equally and ratably, but not one for the other, for all contracts, debts, and engagements of such corporation to the amount of their stock therein, at the par value thereof, in addition to the par value of such shares."

It is the last sentence of section 5, just quoted, which is claimed to be unconstitutional. No fault is found with any other provision of that section. It is contended by the defendant that the title of the act gives no notice that a stockholder of a bank organized under the act will be held individually liable for the debts or engagements of the bank, as provided in section 5.

The liability of the defendant here sought to be enforced by the plaintiff is, of course, of a purely statutory character, having no existence outside of the legislation here under consideration: Bunn's Appeal, 105 Pa. 49, 57; Blair v. Kingston Manufacturing Co., 64 Pa. Superior Ct. 506, 509; Katch v. Benton Coal Company, 19 Pa. Superior Ct. 476.

If the act be constitutional, then the liability can be enforced, and if the contrary appears it must be held that the defendant is not liable. The exceptionally able argument of counsel for the defendant has not convinced us that the act is unconstitutional. On the contrary, we are of opinion that the provision of section 5 of the act above referred to is constitutional.

Prior to the present Constitution, banks were sometimes, in fact, usually, incorporated by special act of the legislature. After the adoption of the Constitution, that could no longer be done, and it was necessary for the legislature to pass some general legislation upon the subject, with the result that the Act of May 13, 1876, P. L. 161, was enacted.

As examples of the general and special legislation prior to that act, we had the Act of April 16, 1850, P. L. 477, entitled "An act regulating banks", providing in section 32 that stockholders of banks should be liable to creditors of their banks under certain circumstances; the Act of May 11, 1874, P. L. 135, entitled, "An act fixing the liability of stockholders of banks and banking companies and other banking institutions in this commonwealth." This latter act made stockholders of corporations named in the act individually liable for double the capital stock owned by them. The Act of March 11, 1872, P. L. 324, entitled "An act to incorporate the Odd Fellows' Savings Bank", provided in section 9 that the stockholders of the bank should be individually liable for all debts and liabilities of said bank in double the amount of stock held by them. See also the Act of April 10, 1873, P. L. 674, entitled "An act to incorporate the Miners' Savings Bank, to be located at Summit Hill, Carbon County", wherein

it was provided in section 13: "The stockholders of said bank shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of said bank to the extent of double the amount of the stock subscribed for or held by them."

We might cite other acts imposing on stockholders individual liability for the debts of banks, but we have cited enough to show the trend of the legislation prior to the enactment of the General Banking Act of 1876.

In prior legislation establishing banks, as we have seen, the rights and liabilities of stockholders were dealt with by the legislature. Such rights and liabilities of stockholders in banks are subjects appropriate and germane to legislation incorporating and regulating banks. When the legislature undertook, in the Act of 1876, to deal with stockholders, their rights, and liabilities, it did so in conformity with a system of legislation in vogue for a number of years. This was enough to put those affected thereby upon inquiry. The title of the act here in question must be passed upon in the light of the legislation already existing on the subject at the time of its passage: Borough of Williamsburg v. Bottenfield, 90 Pa. Superior Ct. 203, and the cases therein cited.

In Gordon, Secretary of Banking, v. Winneberger, 310 Pa. 362, 369, the provisions of section 5 of the Act of 1876 and its purposes were directly under consideration. In speaking of the Act of 1876 the court says:

"It was substantially a reënactment of prior general legislation on the subject. . . . This general act is so obviously intended to be a complete expression of the legislative will concerning the incorporation of banking institutions that, according to familiar rules of construction, we must hold that the legislature intended to repeal the provisions of the May Act concerning the 'doing the business of banks or loaning and discounting moneys as such.' . . . We must hold that the legislature intended what would be legally effective and that section 5 thereafter prescribed the shareholder's liability."

Section 5 of the Act of 1876 provides for a number of things: (a) The amount of capital stock required for the organization of a bank; (b) the number of shares and the par value of each; (c) that the shares shall be deemed personal property and may be transferred on the books of the corporation; (d) that the purchaser of shares of stock shall succeed to all the rights and liabilities of prior holders; (e) that no change shall be made in the articles of association by which the rights, remedies or securities of the existing creditors of the corporation shall be impaired; and (f) for the individual liability of the shareholders. All of these are matters to be taken into consideration by a stockholder when purchasing his stock. They are all matters which enter into the incorporation and regulation of banks. All the provisions of section 5 are fairly comprehended within the general subject.

"If a statute seeks to accomplish one general purpose by one general means, it will be deemed to contain but one subject, though the details or specific means are multiplied to any extent, provided they are in fact subordinate to and germane to the general aim": Commonwealth v. Bilotta, 61 Pa. Superior Ct. 264, 267.

"A title need name only the real subject of the legislation; it need not set forth all enactments intended to be made in regard thereto": Commonwealth ex rel. Attorney General v. Snyder, 279 Pa. 234, 242.

The criterion is this: If the title fairly gives such notice as to reasonably lead to inquiry into the body of the bill, it is all that is necessary; it need not amount to an abstract of its contents: Allegheny County Home's Case, 77 Pa. 77; State Line and Juniata Railroad Company's Appeal, 77 Pa. 429; Common-

444

wealth ex rel. v. The Reliance Safe Deposit & Trust Co., 242 Pa. 177; In re Registration of Campbell, a Physician, 197 Pa. 581;* Minsinger v. Rau, 236 Pa. 327.

Where all the matters in an act are appropriate to a generic though broad subject expressed in the title, the act is not in conflict with the above provision of the State Constitution, even though the subject matter of the statute might have been divided and each subdivision thereof treated in a separate enactment: Bridgeford v. Groh et ux., 305 Pa. 554.

When the constitutionality of a statute is attacked, it is the duty of every judge—without regard to his opinion as to the necessity for the statute or its wisdom—to seek a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found impossible. In determining whether the title of an act sufficiently indicates its contents, the Constitution presupposes a reasonably inquiring state of mind and that such a state of mind would follow the trail indicated by the main part of the title into the body of the act: Reeves et al. v. Phila. Suburban Water Co., 287 Pa. 376; Commonwealth ex rel. Schnader v. Liveright, Secretary of Welfare, et al., 308 Pa. 35; Graeff v. Schlottman et al., 287 Pa. 342; Miller,. Administrator, v. Northampton County et al., 307 Pa. 550; Premier Cereal & Beverage Co. v. Pennsylvania Alcohol Permit Board et al., 292 Pa. 127; Specktor et al. v. Hanover Fire Ins. Co., 295 Pa. 390; Knowles's Estate, 295 Pa. 571; Boocks's Petition, 303 Pa. 363.

The title to the General Corporation Act of April 29, 1874, P. L. 73, is: "An act to provide for the incorporation and regulation of certain corporations." In section 14, as amended by the Act of April 17, 1876, P. L. 30, sec. 3, provision is made that stockholders of certain companies shall be individually liable to laborers for work done for the corporation. There is here fixed upon stockholders a liability beyond the amount paid by them for their stock at the time of purchase.

In Lane's Appeal, 105 Pa. 49, 57, the Supreme Court says:

"The liability created by this section is a direct liability from the stockholder to the creditor, and it exists to the amount of the stock held by the stockholder, without any reference to the question whether it has been paid for or not. Hence the stockholder, although he has paid in full to the corporation for his stock, is nevertheless still liable to the extent of the whole value of his stock to the two classes of creditors named."

The court was here speaking of the special liability of stockholders imposed by section 14 of the Act of 1874. See also Karch v. Benton Coal Company, 19 Pa. Superior Ct. 476, and Dreisbach et al. v. Price et al., 133 Pa. 560.

In Reeves et al. v. Phila. Suburban Water Co., 287 Pa. 376, 388, it is said:

"As was pointed out by the court below, if the acts in question are to be held unconstitutional because of defective titles then it might be concluded that the general Corporation Act of April 29, 1874, P. L. 73, is likewise unconstitutional. Its title is "An act to provide for the incorporation and regulation of certain corporations.' This title gives no specific notice that the power of eminent domain is conferred on certain corporations in the body of the act nor was it requisite that it should. The title covers the whole field of incorporation and regulation just as the titles to the acts before us cover the entire field of merger and consolidation by purchase. 'All necessary or appropriate details to carry out the purpose of the statute there found will be treated as within the title' ".

And in Bridgeford v. Groh et ux., 305 Pa. 554, 557, the Supreme Court states the law as follows:

"The Act of April 29, 1874, P. L. 73, entitled 'An act to provide for the incorporation and regulation of certain corporations,' is a typical instance of the joinder of a number of somewhat different matters in the one general class which was the subject of the act. There the legislature dealt with thirty different kinds of 'corporations' in one statute, with many of the specified regulations applying to some only and not to others. That act is constitutional because all the matters in it are appropriate to the generic, though broad subject of 'corporations' expressed in the title. For the same reason, the Intestate Act is sustainable as against the attack now made upon it. Here, the one subject treated is estates by descent; this controversy respects an estate by descent and that subject is clearly expressed in the title."

If liabilities under the General Corporation Act relating to stockholders of particular corporations are enforceable, as above shown, and if that act is constitutional, then why isn't the Act of 1876, here under consideration, equally so? The matter of holding stock and the liability of stockholders are matters appropriate to the generic though broad subject of the title of the act for the incorporation and regulation of banks of discount and deposit, and hence the provisions of section 5 of the act, here attacked, are constitutional.

By a supplemental affidavit of defense, the defendant attacks the plaintiff's statement of claim for insufficiency, in that (a) it fails to show plaintiff's legal right to recover the exact sum of $250, (b) the averments of the statement fail to show the necessity for the assessment of $250 against the defendant, and (c) the plaintiff's statement fails to allege a good and complete cause of action against the defendant.

The statement of claim alleges that the plaintiff took possession of the business and property of the bank on October 29, 1931, by virtue of the provisions of The Banking Act of 1923 and that on December 2, 1931, he determined to liquidate the affairs of the bank; that the defendant is the owner of five shares of the capital stock of the bank of the par value of $50 each; that, having determined from an examination of the affairs of the bank that the assets were not sufficient to pay its creditors in full, plaintiff, on March 29, 1933, determined to enforce the individual liability of its stockholders; that he caused a written demand for the payment of $250 to be served on the defendant; that at the time he took charge the liabilities of the bank were $179,123.33 and the value of the assets as of June 24, 1933, was $72,631.77; that since October 29, 1931, the sum of $85,489.33 was paid to the common creditors and $5,791.83 to the preferred creditors of the bank; and that by virtue of the provisions of the Act of May 13, 1876, the defendant is liable to the plaintiff in the sum of $250.

It is argued that even though the Act of 1876 is constitutional, there is not sufficient set out in the statement to warrant the assessment made in this case.

Section 37 of The Banking Act of June 15, 1923, P. L. 809, empowers the Secretary of Banking, "Whenever the stockholders of a corporation whereof the secretary shall have taken possession are liable, in addition to their liability as such stockholders for unpaid subscriptions, to an amount equal to the par value of their stockholdings in such corporation, and the secretary has determined from his examination of the affairs of the corporation that the reasonable value of its assets is not sufficient to pay its creditors in full, he may enforce the individual liability of such stockholders to such extent as may be necessary." The section also provides the method by which he shall proceed to enforce the liability.

It is contended by the defendant that the statement, as filed, does not show the necessity for the assessment here sought to be enforced.

It will be noticed that in the statement the assets of a certain date are given and the liabilities as they existed on another date are set forth. It seems to us

that there is some merit in the contention of the defendant. There ought to be a declaration in the statement of the assets and liabilities as of the same date.

Even in a closed bank, the value of the assets change from day to day, and if this were a rule for a more specific statement we would be inclined to make the rule absolute: Winters v. Pennsylvania Railroad Co., 304 Pa. 243; United Mer. Ag. v. Slotsky, 107 Pa. Superior Ct. 467; but, it being an affidavit of defense raising questions of law under section 20 of the Practice Act of 1915, we are powerless to interfere with this statement at this time. If the plaintiff has a right to maintain this suit, then we cannot summarily enter judgment against him. The mere fact that the statement is not as full and complete as it should be does not authorize the entry of such a judgment.

In determining whether or not a summary judgment should be entered in this case, two rules must be applied: (1) The question to be decided is not whether the statement of claim is so clear in both form and specification as to entitle plaintiff to proceed to trial without amending it, but whether, upon the facts averred, it shows with certainty that the law will not permit a recovery by plaintiff; and (2) where a doubt exists as to whether or not a summary judgment should be entered, this should be resolved in favor of refusing to enter it: Davis et al. v. Investment Land Co., 296 Pa. 449; Chelten Avenue Building Corporation v. Mayer, 306 Pa. 225.

The written statement of the secretary under his hand and seal of office, reciting his determination to enforce the individual liability of stockholders and setting forth the value of the assets of the corporation and its liability as determined by him after examination and investigation, mentioned in the act, does not refer to the plaintiff's statement of claim as his counsel appears to think, but refers to a statement which may be offered in evidence upon the trial of the case. Under the Practice Act, it is necessary that the plaintiff should set out sufficient facts in his statement to enable the court, if no affidavit or an insufficient affidavit of defense is filed, to liquidate the claim and enter the judgment required. It would have been better had the plaintiff in this instance set out in his statement the value of the assets and liabilities as of the day he determined to make the assessment here in question. The right of the secretary to levy the assessment up to the full par value of the defendant's stock is not absolute; he can levy only so much as may be necessary to pay the creditors. There should be sufficient facts alleged in the statement to show not only the necessity for an assessment but how much money is necessary to cover the situation. If the figures as of the dates set out in the statement were offered in evidence on the trial of the case in a certificate of the secretary, as provided in the third paragraph of section 37 of The Banking Act of 1923, it would be of little evidential value. It is true that the evidence proposed to be offered upon the trial of the case need not be set out in the statement, but the statement must be complete, so that the court may know whether or not the plaintiff is entitled to judgment if he properly applies therefor.

We have held above that the Act of 1876 is constitutional and that therefore the defendant is liable. It follows that, under The Banking Act of 1923, the Secretary of Banking has a right to enforce the defendant's liability in this action.

And now, to wit, December 6, 1933, the affidavit of defense raising questions of law in this case is not sustained. The defendant is given leave to file a supplemental affidavit of defense to the averments of facts of the statement within 15 days. An exception is noted and bill sealed for the defendant.

From C. M. Clement, Sunbury, Pa.